**In the Matter of Edward R. HANSHAW and Pamela S. Hanshaw, Debtors.**

**Edward R. HANSHAW, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 87–1011–BKC–8B3. Adv. No. 87–147.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 22, 1988.

Patti W. Medearis, for debtors.

Chris Larimore, Bradenton Fla., trustee.

Clinton W. Marrs, U.S. Dept. of Justice, U.S. Atty., Washington, D.C., for U.S. I.R.S.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THE MATTER under consideration in the above-captioned adversary proceeding is a Complaint to Determine the Tax Liability of the Debtor pursuant to 26 U.S.C. § 6672 and 11 U.S.C. § 505 (relating to employee withholding tax) brought by the Plaintiff/Debtor against the Defendant, United States of America. The Court reviewed the record and heard argument of counsel and finds the relevant facts to be as follows:

The stock of S & K Corporation, a small strip mining coal company located in Bickmore, West Virginia, was purchased in 1980 by investors referred to in this action as the Omega group and the Boston group. The Omega group consisted of three investors who oversaw the company's activity and participated to some extent in managing its operations. The remaining six investors, referred to as the Boston Group, had limited involvement in the business operations. The president, Robert Hoffman, and secretary/treasurer, Stuart Cohen, two members of the Omega group, became designated officers of the company and were the officers most frequently at the mining site. The third member of the Omega group, Lewis Bafalis, held no official office, spent less time at the mining site, but nevertheless, had a significant input in the company's affairs.

S & K Corporation initially operated with only a production team. When it became apparent a full time accounting person was needed to manage the day-to-day operations of the company, the Debtor, Edward Hanshaw, was hired as controller in August, 1980 at a starting salary of $24,-000.00. The Debtor's background seemed well suited for the position. As depicted by his resume, the Debtor held an Associates Degree from Beckley Junior College, Beckley, West Virginia, and in 1973 earned a Bachelor of Science degree in Business from Fairmont State College, Fairmont, West Virginia. He held accounting positions from 1974 until he was hired by S & K in 1980. For three years, 1976 through 1979, the Debtor was employed by two coal companies; one as accounting manager and the other as controller. The Debtor then experienced an eight month period of unemployment before the position at S & K Corporation became available.

The Debtor, as controller, managed the financial side of the operations. An idea of the scope of his responsibility is reflected by the extent of accounting activity involved. The company conducted business with roughly 40–45 vendors. On the payroll at any one time were as many as 62 miners, coupled with 5 office employees. Major expense categories, as gleaned from income statements admitted into evidence for the three month period, i.e. November, 1981 through January, 1982, included salaries, subcontractors, depreciation, fuel, hauling, equipment rental, royalties, and interest expense. Leading the list of expenses for the three month period were

salaries which represented a high of 18% of total expenses, and royalties which represented a high of 13% of total expenses over the three month period. The corporation maintained five checking accounts on which payroll and corporate checks were written. The president, the secretary/treasurer, and the Debtor as controller were given individual signatory authority on all five checking accounts with no dollar limit imposed. Without prior experience in setting up an accounting system to record and summarize the company's financial activity, the Debtor nonetheless successfully developed a general ledger system, an accounts payable system, an accounts receivable system, a payroll system, a cash receipts system, and a petty cash system.

An office manager, Joyce Legg, was hired in March, 1981 to assist the Debtor and to replace a younger, less experienced office clerk. The day-to-day accounting activities such as invoicing, billing, posting, payroll, cash disbursement and cash receipt were performed by her. The Debtor prepared the financial reports, communicated with vendors, interacted with outside accountants, and in general, oversaw the general accounting functions performed by the office manager. He physically controlled the general ledger, the petty cash fund as well as the corporate check books. He also filed insurance claims for employees and reviewed mail brought to his attention by the office manager. He assisted the president, inter alia, in factoring receivables and arranging transportation for shipment of coal. He prepared and signed the state and federal tax returns including Form 941 relating to employee withholding taxes. He also made the required tax deposits on behalf of S & K Corporation.

In the fall of 1981, roughly one year after the Debtor was hired, the corporation experienced its first problem associated with remitting the employee withholding tax to the IRS. A meeting was held with an IRS agent in the fall of 1981. It is unclear whether the Debtor attended this meeting but he was aware of the tax problem, as evidenced by a letter written to the IRS in February 1982 in which the Debtor admitted the corporation's delinquency in remitting payment for the withholding tax and requesting waiver of the late payment penalty. The letter accompanied a check signed by the Debtor representing a partial payment for the third quarter, 1981. The Debtor contends the letter was written at the request of the president, Robert Hoffman. The next month, an agent of the IRS and the secretary/treasurer entered into an installment agreement for payment of the outstanding taxes relating to the third, as well as the fourth quarter of 1981. By December 31, 1982, however, the withholding taxes for four calendar quarters still remained outstanding; i.e. the fourth calender quarter of 1981 and the first three quarters of 1982. Other financial problems ensued during this period as well, which the Debtor attributes to the unionization of the workers. Funds became limited and, according to the Debtor, those available were channeled to the operation of the business. Subsequently, the mining activity ceased, the business folded and in July, 1982 the Debtor terminated his employment with the company.

During its operating life, the corporation was required to deduct from its employees' wages the employee's share of FICA taxes and the employee's income taxes. 26 U.S. C. § 3102(a) and § 3402(a). The sums withheld, commonly referred to as "trust fund taxes", are deemed held in a trust for the United States, 26 U.S.C. § 7501(a), and were to be remitted to the United States quarterly. When an employer such as S & K Corporation fails to remit the sum withheld from its employee's wages, the corporation is liable for the taxes, (26 U.S.C. § 3102(a) and § 3403) and a penalty may be assessed against *any* "responsible person" associated with the corporation who failed to remit the taxes to the United States. 26 U.S.C. § 6672. In this regard, on January 21, 1985 the Internal Revenue Service (IRS) assessed the Debtor, as a "responsible person", $198,089.49, representing a 100% tax penalty of $158,161.81 and interest of $39,-927.68 pursuant to 26 U.S.C. § 6672.

On February 26, 1987 the Debtor and his wife filed a Chapter 13 Petition in the United States Bankruptcy Court, Tampa, Flor-

ida. The IRS promptly filed its proof of claim on March 19, 1987 showing the $198,-089.49 as a priority tax debt. On April 27, 1987 the Debtor filed a Complaint to Determine the Tax Liability pursuant to Section 505 of the Bankruptcy Code based upon the assessment.

The Bankruptcy Court has jurisdiction pursuant to 11 U.S.C. § 505(a)(1) to determine the amount or legality of any tax, fine or penalty for which the Debtor is liable. In making its determination, the Court is guided by the Internal Revenue Code, Sections 6671 and 6672. Section 6671 defines a "person". Section 6672(a) states the general rule upon which the tax penalty against a "responsible person" is imposed:

> Any person required to collect, truthfully account for, and pay over any tax ... who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over ... (26 U.S.C. § 6672(a)) [1]

The primary issue before this Court is two-fold. First, was the Debtor the person within the contemplation of the Code who was under a duty to collect and pay over the tax? Secondly, did he willfully fail to do so? Both elements must be satisfied in order to impose the 100% tax penalty pursuant to Section 6672. *In the Matter of Brahm*, 52 B.R. 606, 608 (Bankr.M.D.Fla. 1985) citing *McCarty v. United States*, 437 F.2d 961, 967, 194 Ct.Cl. 42 (1971).

■ Responsibility is a "matter of status, duty and authority, not knowledge." *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir.1979). Prior courts have considered various factors in deciding whether or not the individual is liable as a "responsible person". These include the individu-

al's status as an officer, director and/or stockholder of the corporation, and his attendant duties; the individual's ability to sign corporation checks and the corporate tax return; to hire and fire employees; the level of control over the corporation's financial affairs; the individual's possession of an enterpreneurial stake in the corporation; *In re Clate*, 69 B.R. 506, 509 (Bankr. W.D.Pa.1987) (citing *U.S. v. Davidson*, 558 F.Supp. 1048, 1052 (W.D.Mich.1982); *In re Turner*, 35 B.R. 811, 814 (Bankr.D.N.D. 1983); and *In re Twomey*, 24 B.R. 799, 802 (Bankr.W.D.N.Y.1982)) and whether the individual had the 'final word' in making decisions. *McCarty v. United States* at 967. While it is not necessary for all of these factors to appear, the totality of those that are present must establish that the individual possessed *substantial control* over the corporation's finances. *Clate* at 509. Exclusive control is not necessary as it is well settled that more than one person may be a responsible person under Section 6672. *Roth v. United States*, 779 F.2d 1567, 1571 (11th Cir.1986).

■ The second required element, willfulness, simply means that the responsible person had knowledge of the tax deliquency and knowingly failed to rectify it. *Mazo* at 1154. It does not require that the responsible person act by a bad motive or the specific intent to defraud the government or deprive it of revenue. *Sherman v. United States*, 490 F.Supp. 747, 754 (E.D. Mich.1980).

Who has the burden of proof? Beginning with the position asserted by the IRS that the tax assessment of $198,089.49 is presumptively correct, the Debtor contends he has effectively rebutted the presumption by proving he is not a "responsible person" within the contemplation of 26 U.S. C. § 6672 and § 6671. The Eleventh Circuit's *Thibodeau v. United States, supra,* provides the standard which this Court applies in the instant case. In *Thibodeau,* the Court placed the burden of proof on the

---

**1.** The court in *Thibodeau v. United States* pointed out Section 6672 refers to "(a) any person required to collect, truthfully account for and pay over any tax imposed by this title." The Supreme Court has interpreted these three obli-

gations as disjunctive. *Thibodeau v. United States*, 828 F.2d 1499, 1504. n. 8 (11th Cir.1987) citing *Slodov v. United States*, 436 U.S. 238, 246–49, 98 S.Ct. 1778, 1785, 56 L.Ed.2d 251 (1978).

government to establish the Debtor's status as a "responsible person." Once this element was established, the burden shifted to the Debtor to prove a lack of willfulness. *Thibodeau* at 1505.

■ The IRS contends the Debtor had the status, duty and authority to remit the withholding taxes. They point to the Debtor's daily presence on the job; of his responsibility for the daily, routine accounting functions including maintainance of the books and records of the corporation, monitoring cash balances, signing checks to pay creditors, preparation of the tax returns, making tax deposits, controlling petty cash, filing insurance claims. They contend he was the sole person delegated the responsibility to prepare and file the tax return. In addition, they point out that only one signature was required on the corporate checks and the Debtor had no dollar limit attached to his check signing authority. The IRS admits the Debtor did not have the final say in making corporate decisions, but contends he had sufficient authority to pay creditors, to prefer payment of some creditors over others and that he did make routine payments to creditors without securing prior approval. They further contend he had the ability to hire and fire employees. They also point to his $10,000.00 increase in salary over the two years employed by the corporation. All these factors, they argue, clearly demonstrate his status, duty and authority as a person within the corporation who was responsible for accounting for, collecting and remitting the withholding taxes to the IRS.

Conversely, the Debtor challenges these allegations and attacks each of the two required elements. First, the Debtor directs the Court's attention to decisions which found the taxpayer had the status, duty, authority and effective power to pay the taxes owed. *Clate, supra; Powell v. United States,* 9 Cl.Ct. 58, 85–2 USTC, page 9769 (1985); *Miller v. United States,* 80–2 USTC, page 9677 (S.D.Fla.1980) [1980 WL 1652]; *Gephart v. United States,* 818 F.2d 469, 87–1 USTC, page 9319 (6th Cir. 1987); *Mason v. United States,* 45 AFTR

2d 80–1311 (S.D.Tx 1980); *U.S. Fidelity & Guaranty Co. v. United States,* 47 AFTR 2d 81–680 (N.D.Ala.1980).

The Debtor seeks to distinguish himself from these cases by asserting that he was neither an officer, director nor shareholder, but merely a salaried employee, hired as controller to perform basic accounting functions for the corporation. He contends he rejected the opportunity to become a vice-president of the corporation because he did not want to assume the responsibilities associated with the position. He contends the president who was on the job site daily, guided, directed and controlled all major decisions including payment to creditors. He contends he had no authority to hire or fire employees without prior authority; neither did he negotiate loans, procure credit for the corporation or purchase equipment without prior authority.

The Debtor concedes he prepared, signed and filed Form 941, without remitting the required payment due, which he argues was intended as a red flag to the IRS the withholding tax fund was being diverted elsewhere. He contends the president and secretary/treasurer also signed checks at times. The president tended to pay or approve for payment obigations in which he had a personal interest or those which were needed to keep the company operating on a day-to-day basis, the Debtor argues.

The Debtor further contends he had no authority to pay the IRS without prior approval and asserts his authority to sign the tax return and other corporate checks was merely a business convenience to accommodate the absentee owners to ensure that the obligations necessary to run the business were paid. He cites *Brahm, supra,* in which the court held the Debtor who signed corporate checks when the other two shareholders were not available was not a responsible person as contemplated by 26 U.S.C. § 6672. The Debtor, here urges he, too, was little more than the breathing equivalent of a check writing machine and could not direct the disbursement of corporate funds independently.[2]

**2.** The facts in *Brahm* can be distinguished from the case at hand, however. In *Brahm,* the Debt-

Notwithstanding the Debtor's argument, the Court finds the Debtor was indeed a "responsible person" within the contemplation of 26 U.S.C. § 6672. A person, defined by Section 6671(b), "includes an officer or employee of a corporation ... who, as such officer, employee or member, is under a duty to perform the act in respect of which the violations occurs". 26 U.S.C. § 6672(b). As such, the Debtor need not be an officer or director of the corporation in order to be a "responsible person". The statute includes within its definition of "person" the status of employee (26 U.S.C. § 6672(a)), as was the Debtor in the present case.

Furthermore, this Court finds the Debtor was indeed responsible for collecting, accounting for and paying over the withholding tax. The Court looked to the Debtor's position in the corporate structure and finds he was, in substance, the chief financial officer of the corporation. His only superiors were officers who admittedly were lacking in both the financial expertise as well as the time to run the financial affairs of the company. The Debtor supervised the office manager and delegated the routine accounting functions to her, but assumed for himself the responsibility of reporting the financial status to the other officers either verbally or in the form of financial reports. He also reported special financial information to third parties such as taxing authorities by filing the required tax returns and provided information to the corporation's outside accountants.

He oversaw the overall operations of the payroll system. The payroll itself was manually calculated and the checks prepared by the office manager until that function was computerized and performed by a local bank for the corporation beginning in 1981. While the record does not indicate specifically how the withholding tax information was collected or journalized in the general ledger which the Debtor maintained, the record does contain evidence the bank provided to the company a detailed analysis of the information needed

to prepare the withholding tax return which was exclusively prepared and signed by the Debtor. Indeed, he admitted to making the required deposits for the withholding taxes in general. Without dispute, the Debtor frequently, albeit exclusively, signed payroll checks and made other corporate disbursements. The record is void of any evidence whatsoever which might possibly divest him of his actual and apparent authority of collecting and accounting for the withholding taxes.

A final question is whether he was responsible for paying over the taxes to the IRS. The facts are in dispute. The Omega group stated after the initial meeting with the IRS in the fall of 1981, they emphatically told the Debtor to remit the withholding taxes to the IRS. Indeed, the Debtor concedes he was never told not to remit the taxes to the IRS but contends he was nevertheless not responsible because his superiors, usually the president, pre-approved all payments prior to disbursement. The Debtor places significant emphasis on a procedure which he believed negated any implied authority he may have possessed as a check signer to pay vendors without first securing prior approval from another officer of the corporation. He contends he regularly prepared a list of vendor accounts payable which was reviewed by the president. In addition to the accounts payable list, the Debtor also prepared and presented to him a cash positions list. Utilizing this list along with a projection of coal sales, the president would determine which vendors to pay. The president would review the list on which a notation would be made of whom to pay and the amount to pay, if different from the amount indicated on the list. If there was no notation to pay a particular vendor, the Debtor contends he was not authorized to disburse funds to that vendor. If the Debtor realized the corporation had insufficient funds to fulfill all the authorized payments, he resubmitted the list to the president for further instructions. If the president or another officer were unavailable on site,

or worked part-time, made no major business decisions, didn't hire or fire, was never involved in the operations of the business and was not

aware of the delinquent tax status of the company.

they were always available by phone, contends the Debtor. The Debtor alleges the IRS obligation was included on the list and identified as "priority" but was not noted for payment by the president during the periods assessed in this action. By virtue of the above described procedure for pre-approval, the Debtor contends he was not authorized to pay the tax obligation to the IRS.

It is not uncommon for a company in a financially distressed situation to use the trust fund taxes to pay operating expenses. In this case, the Court notes a substantial amount of the corporation funds were, in fact, paid as royalties to companies owned by some of the investors while salaries continued to be paid and shareholders reimbursed for travel and other expenses during the period in which the withholding taxes were unpaid. Notwithstanding, these facts do not weigh in the Debtors' favor since he was aware the withholding taxes remained unpaid. *See Mazo* at 1157; *Thibodeau* at 1506. Additionally, the Court finds the Debtor's procedure for pre-approval of expenditures in general was insufficient to negate the authority the Debtor, as controller and chief financial officer, possessed in regards to disbursing funds on behalf of the corporation. Based upon the evidence presented, this Court finds the Debtor was indeed a responsible person within the contemplation of Section 6672 of the Internal Revenue Code.

██ The Debtor asserts a "responsible person" sheds this status as "responsible person" if directed not to pay over the funds to the IRS. Notwithstanding the review of the accounts payable list and the Debtor's belief the review constituted prior approval, this Court follows the the Eleventh Circuit's ruling in *Roth, supra,* on this point. In *Roth,* the court ruled an otherwise responsible person does not shed this status even when directed by his superiors not to payover the withholding taxes. *Roth* at 1572. As such, the Debtor remains a "responsible person".

██ The Court now turns to the second required element, willfulness. As noted previously, willfulness, as used in Sec-

tion 6672 of the Internal Revenue Code, only requires a voluntary, conscious and intentional failure to collect, truthfully account for, and pay over the taxes withheld from the employees. *Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970). It is met if there is evidence the "responsible person" had knowledge of payments to other creditors after he was aware of the failure to remit the withheld taxes. *Mazo* at 1157. *Thibodeau* at 1506. That fact has been clearly established in this case. Here, the Debtor admitted knowing the taxes were unpaid and that other creditors were paid while the withholding taxes remained unpaid. The IRS also admitted into evidence copies of corporate checks payable to vendors which were signed by the Debtor during the tax periods in question. But the Debtor contends his actions were not willful because he had reasonable cause for failing to pay over the tax. Reasonable cause has been defined as a failure to exercise ordinary and prudent care in connection with one's duty. *Newsome* at 747. In the instant case, the Debtor contends he would be fired if he did not obey his superiors, consequently his livelihood would be at stake.

Some courts have held reasonable cause as an element in determining whether a taxpayer's action is willful while other courts find reasonable cause should be considered on only limited basis. *Newsome* at 746. While not holding that reasonable cause is a necessary element in the determination of willfulness, this Court finds reasonable cause does not exist in this instance. The present situation was aptly captured in *Howard v. United States* where the taxpayer believed he would be fired if he disobeyed the corporation's officers not to pay over the withholding tax. *Howard v. United States,* 711 F.2d 729 (5th Cir.1983). The Fifth Circuit in *Howard* stated:

> "Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations. Faced with the possibility of leaving the frying pan with only minor burns, he chose in-

**760**

stead to stay on in the vain hope of avoiding the fire." *Howard* at 734.

The fact that the Debtor might have been fired does not make him any less responsible for the payment of the taxes.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED, the Debtor, Edward Hanshaw, is determined to be a "responsible person" pursuant to 26 U.S.C. § 6672. It is further

ORDERED, ADJUDGED AND DE-CREED, the Debtor is liable for the amount of the tax liability as determined by the Internal Revenue Service in the amount of $198,089.49.

DONE AND ORDERED.