682

Michael G. WILLIAMS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–674T.

United States Claims Court.

March 18, 1992.*

Randolph W. Thrower, Atlanta, Ga., for plaintiff. John H. Fleming and Amanda B. Scott, of counsel.

Bartholomew Cirenza, with whom was Asst. Atty. Gen. Shirley D. Peterson, Washington, D.C., for defendant.

## ORDER

ANDEWELT, Judge.

In this tax action, the Internal Revenue Service (IRS), pursuant to Section 6672 of the Internal Revenue Code, 26 U.S.C. (the Code), assessed a penalty against plaintiff, Michael G. Williams, for failing to segregate and pay over to the IRS social security and income taxes withheld from employees of the Williams Bridge Company (WBC) during the last quarter of 1984 and the first half of 1985. Plaintiff paid a portion of this penalty and then brought the instant action seeking a refund of that payment. In response to plaintiff's complaint, defendant filed a counterclaim seeking payment of the remainder of the penalty.

Upon consideration of the evidence presented at trial and the parties' post-trial filings, this court finds for plaintiff. For the reasons set forth below, defendant's counterclaim is dismissed and plaintiff is granted judgment on his complaint.

## I.

Section 6672(a) of the Code provides that the IRS can impose a tax penalty equal to the total amount of an employer's unpaid taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof...." Section 6671(b), in turn, defines

* This order originally was not issued for publication. The court received an oral request from a nonparty that the order be published. This order is reissued as of April 27, 1992, and is available for publication.

the term "person" as "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." Courts frequently have applied the shorthand phrase "responsible person" to a "person" who fits the definition in Section 6671(b). *See, e.g., Slodov v. United States*, 436 U.S. 238, 246 n. 7, 98 S.Ct. 1778, 1784 n. 7, 56 L.Ed.2d 251 (1978). Under this statutory scheme, plaintiff will be liable if he (1) was a "responsible person" under a duty to collect, truthfully account for, and pay over withheld taxes, and (2) willfully evaded or defeated payment of these taxes. *Godfrey v. United States*, 748 F.2d 1568, 1574 (Fed.Cir. 1984).

The Court of Appeals for the Federal Circuit discussed the identification of a "responsible person" at some length in *Godfrey*. The court concluded that the proper focus of such an inquiry is the individual's authority within the business with respect to the expenditure of funds and the payment of taxes. The court explained:

> The overwhelming weight of case precedent requires the factfinder to look through the "mechanical functions of the various corporate officers," *White v. United States*, [178 Ct.Cl. 765, 771], 372 F.2d [513], 516 [ (1967) ], to determine the persons having "the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations." *Haffa v. United States*, 516 F.2d 931, 936 (7th Cir. 1975). The inquiry required by the statute is "a search for a person with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes." *White v. United States*, [178 Ct.Cl. at 772,] 372 F.2d at 517.

748 F.2d at 1575. The court further explained that the inquiry "is a test of substance, not form. Thus, where a person has authority to sign the checks of the corporation or to prevent their issuance by denying a necessary signature, or where

that person controls the disbursement of the payroll or controls the voting stock of the corporation, he will generally be held 'responsible.'" *Id.* at 1576 (citations omitted).

Applying the *Godfrey* "test of substance" to the facts presented herein at trial, plaintiff has met his burden of showing that he was at no relevant time a "responsible person" under a duty to pay over to the IRS the withheld employee taxes.

## II.

The testimony at trial came from a variety of sources ranging from WBC employees to WBC creditors. The testimony was essentially consistent throughout. With regard to decision-making on financial matters, WBC was a one-man operation. That one man was Raiford Williams (Raiford), plaintiff's father.

Prior to forming WBC in 1976, Raiford had spent his career as a field laborer and foreman for a number of companies on road construction projects. He was a man of limited education who wrote and spelled very poorly. Raiford was the founder, sole shareholder, president, and a director of WBC; the other director was his wife, Faye, who held titles of vice president and secretary. Faye had no significant role in the management of the company. Until August or September of 1984, WBC's office was located in Raiford's home.

In 1976, at age 22, plaintiff left the University of Georgia before graduating to work for WBC. Plaintiff began as a field laborer, but within a short time began to spend more of his time working in WBC's office. At the office, plaintiff was involved in bidding, job estimating, and other tasks, including preparing and signing employment tax returns. He was given the titles of vice president, treasurer, and officer manager. But, despite these titles, he had little independent authority and at all relevant times was kept on a very "short leash." His supervisory authority was limited to two office employees—a secretary

and a bookkeeper—and even that power was subject to his father's override.

Plaintiff controlled no voting stock in WBC. He could not prevent issuance of a check by denying his signature and he had no authority within the corporation to sign checks to creditors unless authorized by his father. Plaintiff had no significant independent power over financial matters. He was the submissive son of a domineering father. He was obliged to do, and he did, whatever his father instructed. Despite his titles, plaintiff received a reasonably modest salary ($24,000 in 1984 plus a $5,200 annual expense allowance). His salary was less than one-third of his father's, less than the amount paid to some other WBC employees, and comparable to the pay of 10 or 12 foreman and 10 or 12 WBC crane operators.

Raiford, because of his poor handwriting and spelling, disliked paper work and kept control over WBC's daily operations through verbal communication. Raiford spent most of his time in the field and generally was in the office twice a day, in the morning and again in the evening. He and plaintiff shared a single desk at the office. When out of the office, Raiford kept in touch with plaintiff by short-wave radio or car phone.

Raiford authorized plaintiff to sign some contracts, loan agreements, and legal obligations. Raiford also often had his son sign checks on both WBC's general operating account and WBC's payroll account. However, up through April 1985, plaintiff did not have a signatory card on file at WBC's bank and could not sign these checks in his own name—he signed his father's name. In April 1985, a signature card was filed with WBC's bank which authorized plaintiff to sign checks in his own name on WBC's general operating account. Thereafter, plaintiff signed his own name for checks on this account. But, while plaintiff was granted check signing authority, plaintiff was never given any discretion in the payment of bills. On a regular basis, plaintiff, or the bookkeeper, would prepare a list of bills that were due

and Raiford would mark those he wanted paid. Pursuant to his father's instructions, plaintiff would write the checks and pay only those bills marked. Whenever unanticipated items arose that required immediate payment, plaintiff was obliged to seek his father's directions.

When WBC began to experience financial difficulties in 1984, Raiford directed plaintiff to divert to other creditors funds that had been withheld from employee paychecks for federal tax purposes. Plaintiff objected but, consistent with normal WBC operations, Raiford told plaintiff which creditors to pay, and plaintiff signed the checks according to Raiford's orders. Plaintiff in turn usually dealt directly with the creditors and conveyed to them WBC's decisions on when their debts would be paid. The creditors, however, had no personal knowledge of who made these payment decisions or how they were reached.

Despite Raiford's attempts to keep WBC afloat, WBC's bonding surety assumed management of the company. The surety promptly fired plaintiff in June 1985. The IRS assessed a 100 percent penalty under Section 6672 of the Code against both Raiford and plaintiff for WBC's unpaid withholding taxes for the tax periods ending December 31, 1984, and June 30, 1985. The IRS also assessed interest and penalties on these amounts.[1]

 Check signing authority potentially can weigh heavily in support of a conclusion that an individual is a "responsible person" for withholding tax purposes. *See Godfrey*, 748 F.2d at 1576. Similarly, an individual's title within a corporation often tells much about the individual's responsibility, authority, and power. But here, though plaintiff had check writing authority and seemingly important titles, he lacked any independent authority within WBC. Plaintiff lacked any significant, much less ultimate, authority over the expenditure of funds. Raiford had the sole authority over payment of creditors and never came close to delegating to his son "the power to control the decision-making process by which the employer corporation

---

**1.** WBC filed for bankruptcy in June 1985, and was involuntarily dissolved in 1988. Raiford

became insolvent and later died in January 1989, prior to the filing of this suit.

allocates funds to other creditors in preference to its withholding tax obligations." *Haffa v. United States*, 516 F.2d 931, 936 (7th Cir.1975). Plaintiff simply cannot "fairly be said to be responsible for the corporation's failure to pay over its taxes." *White v. United States*, 178 Ct.Cl. 765, 772, 372 F.2d 513, 517 (1967). Hence, when plaintiff obeyed his father's directions and signed checks to creditors other than the IRS, he did not incur liability under Section 6672(a). *See, e.g., Feist v. United States*, 221 Ct.Cl. 531, 539, 607 F.2d 954, 960 (1979); *Heimark v. United States*, 18 Cl. Ct. 15 (1989).

### Conclusion

For the reasons set forth above, plaintiff was not a "person required to collect, truthfully account for, or pay over" employment taxes. Because the court finds that plaintiff was not a "responsible person," it is unnecessary to address the question of willfulness. Plaintiff is entitled to a refund of monies he paid to the IRS and monies withheld from his earnings or otherwise obtained by defendant in attempts to collect a Section 6672(a) penalty. Accordingly, on or before April 10, 1992, the parties shall file a stipulation as to the appropriate total award due plaintiff based on the findings and conclusions set forth above. The court will then order that judgment be entered in that amount.

IT IS SO ORDERED.