**In re Lou DeMARCO, Jr., Debtor.**

**No. 97–14132–8G3.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 6, 1999.

Michael C. Markham, Johnson, Blakely, Pope, Bokor Etal, Clearwater, FL, for Debtor.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

Karen Davis Miller, U.S. Department of Justice, Washington, DC, for Claimant.

## ORDER ON MOTION TO DETERMINE TAX LIABILITY

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Motion to Determine Tax Liability filed by the Debtor, Lou DeMarco, Jr. Prior to the filing of this case, the Internal Revenue Service had assessed a trust fund recovery penalty against the Debtor as a "responsible person" pursuant to § 6672 of the Internal Revenue Code. The Debtor denies that he was a "responsible person" within the meaning of the statute, and denies that he willfully failed to collect, account for, or pay over any federal employment taxes. Consequently, the Debtor requests that this Court determine his tax liability pursuant to § 505 of the Bankruptcy Code.

### Background

The Debtor moved from Michigan to Florida in late 1984, to be close to his parents who had relocated to Florida. The Debtor's father was in the construction business. The Debtor's father suggested that the Debtor seek employment with a corporation which was in the business of installing underground pipe or utility systems, Tri–D, Inc. The Debtor's father was acquainted with Don and Nancy Burton, who owned and operated Tri–D, Inc. In 1985, the Debtor was employed by Tri–D, Inc. The Debtor was hired by Nancy Burton to work in Tri–D's office. At that time, Nancy Burton was the secretary of the corporation and managed the office, and Don Burton was the president of the corporation and ran its field operations.

The Debtor did not have a particular title or position when he began work at Tri–D, Inc. Instead, he performed general office duties such as answering the telephone, typing letters, scheduling meetings, and running errands.

Between six and nine months after the Debtor was employed by Tri–D, Inc., the

Burtons asked the Debtor to extend a loan to the company on a short-term basis. After consulting with his father, the Debtor loaned the company almost $40,000, which the Debtor obtained from his father. The loan was not repaid when it was due. The Debtor sought repayment of the loan, and he ultimately accepted 33 and 1/3 percent of the stock of Tri–D, Inc. in exchange for repayment of the loan. Shortly after he received the stock, the Debtor became vice president of Tri–D, Inc.

Neither the Debtor's duties nor the Debtor's salary changed after he became a stockholder and vice president of the company. He continued to perform general office or clerical functions, and his salary was not increased. All employees' salaries were controlled by Nancy Burton.

At some point after the Debtor became vice-president of Tri–D, Inc., the company also borrowed approximately $100,000 from the Debtor's father. This loan was never paid in full.

In the early 1990's, Nancy Burton apparently determined that Tri–D could obtain certain contractual or bidding advantages if it qualified as a "minority" company, or a company with the majority of its ownership held by women. Accordingly, Nancy Burton reduced the shares of stock held by Don Burton to twenty percent, reduced the shares of stock held by the Debtor to twenty percent, and increased the shares of stock which she held to sixty percent. The Debtor did not receive any consideration for the transferred stock, and did not participate in the decision to alter the corporate ownership.

The employment taxes at issue in this case relate to the period commencing with the first quarter of 1993, and ending with the third quarter of 1994. During most of this period, Tri–D's sole bank account was maintained at Liberty National Bank. In May of 1991, the Debtor had signed the bank's form which authorized Nancy Burton, Don Burton, and the Debtor to write checks from the company's checking account, and the Debtor therefore was an authorized signatory on the company's bank account. According to the form signed by the Debtor and the Burtons, two signatures were required for any withdrawal from the account.

Additionally, an informal office procedure had developed for the payment of Tri–D's bills. According to this procedure, Nancy Burton would provide the Debtor with company bills that were to be paid. The Debtor would then type the checks for payment, sign them, and place them on Nancy Burton's desk for her to sign and mail. The Debtor did not select which bills were paid, but only typed the checks in accordance with Nancy Burton's instructions. Nancy Burton retained possession of the checkbook.

A similar informal procedure applied to the preparation of Tri–D, Inc.'s Employer's Quarterly Federal Tax Return. In connection with his office duties, the Debtor prepared the quarterly returns and placed them on Nancy Burton's desk for signature. If she did not sign them by the time that they were due, the Debtor signed and mailed them. The Debtor signed the returns for each quarter of 1993 and for the first three quarters of 1994. The returns were not accompanied by a check when they were mailed to the Internal Revenue Service. Nancy Burton informed the Debtor that she would "take care of" the payments.

The Debtor's activity with Tri–D decreased in 1994 when his father became terminally ill and died, and the Debtor resigned from Tri–D, Inc. in January of 1995.

On March 20, 1995, a civil penalty was assessed against the Debtor pursuant to § 6672 of the Internal Revenue Code. The penalty related to Tri–D, Inc.'s unpaid withholding taxes for all four quarters of 1993 and the first three quarters of 1994, and assessed the Debtor as a "responsible person" of the corporation under the stat-

ute. The amount of the penalty or tax is $137,180.59.

## Discussion

■ Generally, under the Internal Revenue Code, employers are required to withhold federal income and social security taxes from the wages of their employees and to pay the taxes to the government. If such taxes are not withheld and paid, § 6672 imposes a "penalty" equal to the unpaid taxes on any person who was required to collect and pay over the withheld taxes and who willfully failed to do so. The primary purpose of § 6672 is to furnish a means of ensuring that the tax is paid. "Although denoted a penalty in the statute, the liability imposed by § 6672 is not penal in nature." Instead, the statute is only a mechanism to facilitate the collection of the tax. *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir. 1986).

Section 6672(a) of the Internal Revenue Code provides:

**§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax**

(a) **General rule.**—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Section 6671(b) defines the term "person" as an "officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

■ Courts are generally consistent in their statements of the principles underlying § 6672. First, courts essentially agree that the issue of liability under § 6672 involves a two-part inquiry. The first prong of the inquiry relates to whether an individual is a "responsible person" for the tax periods at issue. The second prong of the inquiry relates to whether the individual "willfully" failed to collect or account for or pay over trust fund taxes. *In re Rojo*, 212 B.R. 1022, 1024 (Bankr.S.D.Fla.1997); *In re Hanshaw*, 94 B.R. 753, 756 (Bankr. M.D.Fla.1988).

■ With respect to allocating the burden of proof, it appears that the initial burden is placed on the government to prove that an individual is a "responsible person" within the meaning of the statute. *In re Hanshaw*, 94 B.R. at 756–57. If it is established that the individual is a "responsible person," the burden shifts to the individual to prove that his conduct was not "willful." *In re Malloy*, 17 F.3d 329, 331 (11th Cir.1994); *In re Williams*, 931 F.2d 805, 810 (11th Cir.1991).

■ Further, with specific reference to the first prong of the inquiry, courts consistently focus on whether a person has the duty and authority to collect, account for, or pay over taxes withheld from the wages of a company's employees. *In re Williams*, 931 F.2d at 810. Responsibility is a matter of status, duty, and authority. *In re Rojo*, 212 B.R. at 1024. Factors frequently considered in determining whether an individual is a responsible person include (1) the holding of a corporate office, (2) control over financial affairs, (3) the authority to disburse corporate funds or write checks, (4) the ownership of stock, and (5) the ability to hire and fire employees. *In re Williams*, 931 F.2d at 810; *In re Rojo*, 212 B.R. at 1024; *In re Lynch*, 187 B.R. 353, 357 (Bankr.N.D.Ala.1995).

■ Finally, with respect to the second prong of the inquiry, the individual's "willfulness" may be established by showing that the individual had knowledge of payments to other creditors after he became aware that the withheld taxes had not been remitted. *In re Williams*, 931

F.2d at 810. "All that is required is knowledge that payments are being made to other creditors after knowledge that the withholding tax obligation has not been paid." *In re Rojo*, 212 B.R. at 1025. Alternatively, willfulness may also be shown if the individual acts with "reckless disregard" of the known or obvious risk that the trust fund taxes would not be paid. *Id.* Consequently, "a responsible person is liable under § 6672 if he or she either had actual knowledge that the taxes were not being paid or acted with a reckless disregard of a known or obvious risk of nonpayment." *In re Malloy*, 17 F.3d at 332. See also *In re Lynch*, 187 B.R. at 357.

### Application

■ In this case, the Court determines that the Debtor was not a "responsible person" within the meaning of § 6672 of the Internal Revenue Code.

The Government correctly asserts that various factors are present in this case which often indicate that an individual was such a "responsible person." The Debtor was a stockholder and officer of the corporation, for example, and was a signatory on the corporation's sole bank account during most of the period at issue. In fact, it appears that the Debtor actually signed many, if not most, of the company's checks during the period, and that some of the checks were processed and paid with no signature other than the Debtor's, even though two signatures were required for withdrawals from the corporate bank account. Additionally, the Debtor guaranteed certain corporate obligations, including a loan from Barnett Bank in the approximate amount of $500,000, a loan from Liberty National Bank in the amount of $48,350, and an obligation to Summit Consulting, Inc. arising from a workers' compensation insurance contract. Finally, the Debtor signed various corporate documents, including a Corporate Authorization Resolution regarding the deposit of corporate funds and, significantly, the company's Employer's Quarterly Federal Tax Returns.

■ The focus of the inquiry as to whether an individual is a "responsible person" within the meaning of § 6672, however, does not involve a mechanical application of any particular list of factors. "The determination of responsibility is a matter of substance, not merely form." *Heimark v. United States*, 18 Cl.Ct. 15, 21 (Ct.Cl.1989). As stated above, responsibility is a matter of status, duty, and authority. *In re Rojo*, 212 B.R. at 1024. In considering the individual's status, duty, and authority, "the test is one of substance, not form. The inquiry must focus on *actual* authority to *control*, not on titles or trivial duties." *Heimark v. United States*, 18 Cl.Ct. at 23. (Emphasis supplied.)

In this case, the Debtor did not possess the actual authority to control the financial affairs of Tri–D, Inc., notwithstanding his title as vice president of the corporation. The Debtor's position is not unlike that of the plaintiff in *Heimark, supra.* In *Heimark*, the plaintiff was a shareholder, comptroller, and treasurer of a corporation. Like the Debtor in this case, the plaintiff had the authority to sign corporate checks, although two signatures were required. Despite these indications of authority, however, the Court concluded that the corporation was actually operated by a president who exercised total control, and that the plaintiff possessed no significant power either to make decisions or to disburse funds. The court found, for example, that the plaintiff did not receive any compensation for serving as treasurer, supervised no employees, and made no expenditures without the president's approval. Additionally, like the Debtor, the plaintiff in *Heimark* simply followed instructions in connection with his check-writing duties.

Among plaintiff's duties was the preparation of checks. Monahan told plaintiff which checks to draft and then only endorsed those he alone decided to send.

Under Monahan's policies, plaintiff automatically signed all checks that he drafted and presented to Monahan for final approval.

*Heimark v. United States,* 18 Cl.Ct. at 22. Because the plaintiff "had little or no decision-making power beyond the ministerial duty of co-signing checks," the court concluded that the plaintiff did not possess sufficient authority or control to establish responsibility for purposes of § 6672. The plaintiff had a "courtesy title" only, with no authority to control disbursements. *Id.* at 23.

To the same effect is *Williams v. United States,* 25 Cl.Ct. 682 (Ct.Cl.1992). In *Williams,* the plaintiff was the vice president, treasurer, and office manager of a construction company. The plaintiff's office duties included preparing and signing the company's employment tax returns, and the plaintiff was authorized to sign company checks. In writing checks, however, the plaintiff paid only those bills that were specifically designated by his father, who had formed and controlled the company. The court concluded:

> [T]hough plaintiff had check writing authority and seemingly important titles, he lacked any independent authority with WBC. Plaintiff lacked any significant, much less ultimate, authority over the expenditure of funds.

*Williams v. United States,* 25 Cl.Ct. at 684. The court found that the plaintiff was not a responsible person. Because the plaintiff's father retained absolute control over which creditors were paid, the court determined that the plaintiff simply was not responsible for the company's failure to pay over the taxes. *Id.* at 684–85.

Like the plaintiffs in *Heimark* and *Williams,* the Debtor in this case did not control Tri–D's financial dealings or exercise any significant authority over the disbursement of the corporation's funds. Notwithstanding his ownership interest in the corporation and his title as an officer, the substance of the Debtor's position at Tri–D reveals that he had only "trivial status, limited duties, and little actual authority." *Heimark v. United States,* 18 Cl.Ct. at 25. The testimony and evidence at trial clearly show that Nancy Burton exercised total and exclusive dominance over the financial affairs of Tri–D, Inc., that the Debtor had no authority to make independent decisions, and that the Debtor served only a clerical function and followed Nancy Burton's instructions.

The Debtor's status as an officer and shareholder were positions only "on paper," and did not result in any enhancement of his original employment as an office worker. The Debtor testified that his duties were the same both before and after he became an officer and shareholder, and he did not have any specific duties as vice president or as a shareholder. Additionally, the Debtor did not receive any consideration for the transfer of a portion of his stock in 1991, and had no vote in the decision to effect the transfer to Nancy Burton.

The Debtor further testified that Nancy Burton controlled all corporate funds and made all corporate financial decisions. Nancy Burton alone, not the Debtor, decided which creditors should be paid. The Debtor simply prepared the checks for payment to such creditors in accordance with Nancy Burton's instructions, then gave the checks to her to sign and mail. Nancy Burton maintained and balanced the checkbook. The Debtor had no authority to disburse funds from the corporation absent Nancy Burton's approval. Nancy Burton also controlled the hiring, firing, and salaries of the office employees.

The testimony of the Debtor regarding Nancy Burton's exercise of exclusive corporate control is corroborated by the testimony of Don Burton and Cheryl Dahlberg. As set forth above, Don Burton was an incorporator, shareholder, and officer of Tri–D, Inc. According to Mr. Burton, Nancy Burton "ran the office," including determining which bills to pay, managing the payroll, and hiring the office staff.

With respect to the relative positions of the Debtor and Nancy Burton, Mr. Burton testified that "she was the boss and he—he did what she told him to do or—he did what she told him to do." (Depo. p. 21.) "Nancy primarily told Lou what to do." (Depo. p. 18.) Nancy was "running everything in the office," and the Debtor was just doing "bookkeeping stuff." (Depo. p. 20.) Finally, it is significant that Mr. Burton was looking to Nancy Burton to resolve the payroll tax deficiency. (Depo. p. 39.)

Cheryl Dahlberg was Tri–D, Inc.'s "outside accountant" who visited the business premises periodically to audit the company's financial records. Ms. Dahlberg testified that payments to creditors or corporate checks "could not be completed until Nancy looked at them and signed off on the checks," (Depo. p. 14), that Nancy was making "all" of the decisions, (Depo. p. 20), and that Nancy Burton was "the one in control of the company." (Depo. p. 27). By contrast, in Ms. Dahlberg's view, the Debtor performed only office management tasks such as answering the telephone, taking messages, handling the filing, and performing some accounts receivable and accounts payable duties, but that the Debtor "didn't have the decision making ability." (Depo. p. 28).

In conclusion, the Debtor was not an officer or employee of Tri–D, Inc. who was under a duty to collect, account for, and pay over the taxes withheld from its employees' wages. The evidence clearly shows that Nancy Burton controlled the corporation's financial affairs, that the Debtor possessed no independent authority, but only followed the instructions of Nancy Burton, and that the Debtor did not have the power to determine which of the corporation's creditors were paid. The Debtor is not a "responsible person" within the meaning of § 6672 of the Internal Revenue Code.

Having determined that the Debtor is not a responsible person within the meaning of the statute, it is not necessary for the Court to determine whether the Debtor willfully failed to collect or account for or pay over the trust fund taxes at issue. *Williams v. United States*, 25 Cl.Ct. at 685 ("Because the court finds that plaintiff was not a 'responsible person,' it is unnecessary to address the question of willfulness."); *Heimark v. United States*, 18 Cl. Ct. at 24 ("Because plaintiff was not responsible for GSI's failure to pay taxes, this court need not examine in detail whether he willfully caused the default.")

## Conclusion

The Debtor was not a responsible person within the meaning of § 6671 of the Internal Revenue Code, who failed to collect, account for, or pay over trust fund taxes within the meaning of § 6672 of the Internal Revenue Code. Although the Debtor was an officer and shareholder of Tri–D, Inc., and was an authorized signatory on the corporation's bank account, the Debtor possessed no actual control over the company's financial affairs and had no power to direct the payment of particular creditors. Consequently, the Debtor should not be liable for the penalty imposed on "responsible persons" under § 6672.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Determine Tax Liability filed by the Debtor, Lou DeMarco, Jr., is granted as set forth in this Order.

2. The Debtor has no liability pursuant to § 6672 of the Internal Revenue Code for the employees' share of the federal income and social security taxes withheld in connection with the corporation known as Tri–D, Inc. for the period commencing with the first quarter of 1993 and ending with the third quarter of 1994.