# United States Tax Court

T.C. Memo. 2024-33

RODNEY A. TAYLOR,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 3043-17L.                                    Filed March 25, 2024.

————

*Robert B. Gardner III*, for petitioner.

*Jason P. Oppenheim*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, *Chief Special Trial Judge*: In this section 6330(d)[1] case petitioner challenges respondent's determination to proceed with collection of an assessment made against him for a trust fund recovery penalty (TFRP)[2] pursuant to section 6672.

According to respondent, upon the failure of Taylor & Co., Inc. (Company), to withhold and/or pay over to respondent certain employment taxes, petitioner as a "person" (commonly referred to as a "responsible person" or "responsible officer") described in sections 6671(b) and 6672(a) is liable for a penalty equal in amount to those employment taxes.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The TFRP is sometimes referred to in this Opinion as the underlying liability.

**[\*2]** According to petitioner (1) he was not at the relevant time a responsible person within the meaning of section 6671 or section 6672, but even if he was, (2) he was not provided proper notice of the proposed TFRP assessment as required by section 6672(b)(1), but even if he was a responsible person who was properly notified as required by section 6672(b), (3) respondent's determination to proceed with collection of the underlying liability is an abuse of discretion.

The issues for decision are whether (1) petitioner, as the sole shareholder and an officer of Company at the relevant time, was a person described in sections 6671 and 6672, (2) respondent properly notified petitioner of the proposed TFRP assessment in accordance with section 6672(b), and (3) respondent's determination to proceed with collection of the TFRP is an abuse of discretion.

FINDINGS OF FACT

Petitioner, who has degrees in political science, speech, and theater, is fluent in several foreign languages. He has an interest in international affairs and also has a management degree in international relations. Early in his professional career he worked for the Mississippi Economic Development Authority at various locations in the United States and abroad. Later petitioner became associated with a management consulting firm but eventually left that firm to work for one of the firm's clients. In 1984 petitioner formed and operated his first consulting business. In 1993 he caused the incorporation of Company, a management consulting and executive recruiting business.

At all times relevant here, petitioner was Company's chief executive officer (CEO) and sole shareholder. He had the authority to hire and fire employees of Company and exercise control over Company's bank accounts. In January 2014 petitioner transferred assets from Company to a newly organized business entity.

According to petitioner, his successes in management consulting and other professional endeavors are attributable to his interpersonal skills. He claims to suffer from a learning disability with respect to mathematics, but he is otherwise competent to conduct his personal and business affairs. Throughout his professional career he delegated many business and sometimes personal financial responsibilities to employees and accountants, including a certified public accountant named Robert Gard.

**[*3]**     Before the period or periods in dispute, petitioner hired Mr. Gard to manage Company's bookkeeping and other accounting matters.  Over an unspecified period of years Mr. Gard embezzled between one and two million dollars from Company.

The embezzlement scheme was discovered in August 2013.  Mr. Gard suffered a heart attack during a meeting with petitioner and petitioner's financial planner while they were going over records that Mr. Gard apparently had fabricated to cover up his embezzlement.  According to petitioner, he took actions that saved Mr. Gard's life; and while recovering at the hospital, Mr. Gard confessed to the embezzlement.   Petitioner hired attorneys and accountants to reconstruct the amount of the losses petitioner and Company sustained because of Mr. Gard's embezzlement.  Later petitioner and/or Company sued Mr. Gard and others to recover those losses.

According to the complaint filed in one of those lawsuits, Mr. Gard embezzled and spent funds allocated for the payment of some of Company's employment taxes, some of which are included in the TFRP here in dispute.  That lawsuit was settled in February 2014 upon a $175,000 payment to Company from an insurance company.  Also in February 2014 Company and petitioner sued the bank that Mr. Gard used to further his embezzlement scheme.  The parties agreed to settle that lawsuit by payment of $900,000 to petitioner in June 2015.  Petitioner used portions of the settlement proceeds from both lawsuits to pay personal expenses.  Apparently, none of the settlement proceeds from either lawsuit were used to pay any of Company's outstanding employment tax liabilities.

Petitioner continued to operate Company while the above-referenced lawsuits were pending.  In December 2013 petitioner paid himself a bonus of over $77,000.  In January 2014 funds held in Company's bank accounts were transferred to bank accounts maintained by a new business entity that petitioner organized.

Before assessing the TFRP here in dispute, respondent determined that Company had failed to collect and/or remit certain employment taxes owed for a certain period or periods.  By letter dated December 17, 2014, after appropriate supervisory approval for the assessment of the TFRP, respondent attempted to notify petitioner of the then-proposed TFRP assessment as required by section 6672(b). The letter was sent by certified mail to petitioner at 99 Sandy Shores Court, Panama City, Florida, 32413 (99 Sandy Shores), but the letter was

[*4] returned to respondent. A sticker placed on the envelope by the United States Postal Service reads: "Return to Sender Vacant Unable to Forward."

In January 2014 petitioner lived at 113 Sandy Shores Court, Panama City, Florida, 32413 (113 Sandy Shores). Petitioner shows this address on his 2013 federal income tax return, which was processed by respondent on October 6, 2014.

On October 10, 2014, petitioner and his representatives met with respondent's revenue officer to discuss whether petitioner should be held liable for the TFRP. At the meeting, petitioner signed a Form 4180, Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Taxes. On this Form 4180, petitioner's typewritten address is shown as "112 Sandy Shores" but corrected by hand to show 113 Sandy Shores. At this meeting petitioner and/or his representatives also provided to respondent's revenue officer Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433–B, Collection Information Statement for Businesses, with respect to Company. On these documents, petitioner's address is also shown as 113 Sandy Shores.

On October 27, 2014, petitioner exchanged 113 Sandy Shores for 99 Sandy Shores. Apparently soon thereafter, he moved to Atlanta, Georgia; 99 Sandy Shores was held for rent.

At some point before November 4, 2014, petitioner or one of his representatives provided an updated version of Form 433–A to respondent's revenue officer. Handwritten notations on the updated Form 433–A add information not provided on the earlier version, and petitioner's address is changed from 113 Sandy Shores to 99 Sandy Shores by placing an "X" over "113" and adding "99" in front of the words "Sandy Shores." On the basis of this information shown on the updated Form 433–A, on November 4, 2014, respondent's revenue officer prepared Form 2363, Master File Entity Change, to update petitioner's address from 113 Sandy Shores to 99 Sandy Shores.

Respondent assessed the TFRP on or around April 6, 2015. By letter dated February 23, 2016, respondent notified petitioner that a Notice of Federal Tax Lien (NFTL) had been filed with respect to the underlying liability. The letter also advised petitioner of his right to request an administrative hearing to challenge that collection action, which he did.

**[\*5]**   On the form requesting a hearing, petitioner checked the box for "Offer in Compromise" and took the position that there was doubt as to the underlying liability.  During the administrative hearing petitioner did not request a collection alternative to the NFTL, and he does not do so in this proceeding.  Petitioner was notified of respondent's determination to proceed with collection of the underlying liability by letter dated January 18, 2017.  Consistent with allegations made in the Petition filed in response to that determination, we consider petitioner's challenge of respondent's determination to be a challenge to the existence or the amount of that liability.[3]  A taxpayer who challenges an underlying liability in cases such as this one bears the burden of proof regarding the correct tax liability.  *See* Rule 142(a); *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013).  And we review, de novo, the Commissioner's determination with respect to the existence or the amount of the taxpayer's underlying liability.  *Sego v. Commissioner*, 114 T.C. 604, 610 (2000).

OPINION

In general, and as relevant here, section 6672(a) provides that "[a]ny person required to collect, truthfully account for, and pay over" any federal tax "who willfully fails" to do so, shall "be liable to a penalty equal to the total amount" of that tax.  "Person" as used in section 6672(a) is defined in section 6671(b) to include an officer or employee of a corporation who is under a duty to collect, account for, and pay over the tax.  Section 6672(a) penalties are assessed and collected in the same manner as taxes against a person who is described in section 6671(b).  Such persons are referred to as "responsible" persons, a term which is broadly applied.  *Mason v. Commissioner*, 132 T.C. 301, 321 (2009).

A responsible person is any person required to collect, account for, and pay over withheld taxes.  *See* § 6672(a).  Whether someone is a responsible person is "a matter of status, duty and authority, not knowledge." *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir. 1979).  The essential question is whether the person had sufficient control over a taxpayer's affairs to ensure the payment of the taxpayer's employment taxes. *Scott v. United States*, 825 F.3d 1275, 1279 (11th Cir. 2016) (citing *George v. United States*, 819 F.2d 1008, 1011 (11th Cir. 1987)).  The indicia of that control held by a responsible person include "the holding

---

[3] Respondent now concedes that the underlying liability is overstated because some of Company's employment tax liabilities that prompted the TFRP assessment against petitioner have been paid.

[*6] of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir. 1987). In considering an individual's status, duty, and authority, the test is one of substance, and the focus of the inquiry does not involve a mechanical application of any particular list of factors. *See In re DeMarco*, 258 B.R. 480, 485 (Bankr. M.D. Fla. 1999) (citing *Heimark v. United States*, 18 Cl. Ct. 15, 23 (1989)), *aff'd sub nom. United States v. DeMarco*, 256 B.R. 320 (M.D. Fla. 2000). The inquiry must focus on actual authority to control, not on trivial duties. *Id.*

According to petitioner, because of his limited ability to comprehend mathematical concepts, he is not a person described in section 6671 or 6672(a). According to respondent, because of his position, authority, and control over Company's affairs, he is. For the following reasons, we agree with respondent.

During the relevant period or periods, petitioner was Company's CEO and sole shareholder. He controlled the financial affairs of Company, disbursing corporate funds both to himself and to a newly formed business entity. He also exercised authority to hire and fire employees and delegated various tasks involved in operating Company to those employees. He apparently made the decision to sue Mr. Gard on Company's behalf. Petitioner clearly had and exercised control over Company's corporate affairs.

Petitioner points to his difficulties comprehending mathematical concepts and notes that he hired others, including Mr. Gard, to take responsibility for Company's bookkeeping and tax matters. As petitioner views the matter, the failure to pay Company's employment taxes results from Mr. Gard's embezzlement, not from anything petitioner did or failed to do. Relying heavily on these reasons, he argues that he should not be held liable as a "responsible person" for Company's employment taxes. The focus, however, is on his authority to control Company's obligations to pay its employment taxes, not on whether he personally took responsibility for that duty. *See In re DeMarco*, 258 B.R. at 485. Considering his position with Company and taking into account his decisions to disburse Company funds to pay for items other than Company's employment tax liabilities, we find that petitioner was a person described in section 6672(a) for purposes of Company's outstanding employment tax liabilities.

**[\*7]**    Petitioner also challenges the assessment of the TFRP because he did not "willfully" fail to pay Company's employment taxes for the period or periods here in dispute. Once a person is demonstrated to be a "responsible person," the burden is on that person to establish that the failure to pay a tax was not willful. *Malloy v. United States*, 17 F.3d 329, 331 (11th Cir. 1994).

For purposes of section 6672, willfulness is indicated if a responsible person, rather than paying a taxpayer's outstanding employment taxes, uses the taxpayer's funds for other purposes instead. *Mason*, 132 T.C. at 325 (citing *Gustin v. United States*, 876 F.2d 485, 492 (5th Cir. 1989)). Petitioner became aware of Mr. Gard's failure to pay Company's employment taxes no later than September 5, 2013, when he filed a lawsuit alleging that Mr. Gard had "confessed to spending the funds allocated for payment of employment taxes." After learning of the failure to pay Company's employment taxes, petitioner nonetheless disbursed Company's funds to pay obligations other than those owed to respondent. Petitioner transferred more than $55,000 from Company to a newly formed business entity that he organized after Company's employment taxes were assessed. In December 2013 petitioner paid himself a bonus of over $77,000. Petitioner used the substantial proceeds he and/or Company received from the settlements of the above-mentioned lawsuits for various purposes, but none of the settlement proceeds were used to satisfy any of Company's outstanding employment tax liabilities.

Petitioner blames the failure to pay Company's employment taxes for a certain period or periods on Mr. Gard, but delegation of the responsibility to collect and pay over Company's employment taxes cannot support a finding that petitioner did not willfully fail to pay those employment taxes. *See Hornsby v. IRS*, 588 F.2d 952, 953 (5th Cir. 1979). Petitioner was obligated to ensure that Company's employment taxes were collected and paid over to respondent even though he delegated responsibility for discharging that duty to Mr. Gard. *See id.* We find that petitioner failed to demonstrate that his failure to satisfy Company's employment tax liabilities was not willful within the meaning of section 6672.

A section 6672(a) penalty may be assessed against a taxpayer only after the Commissioner provides written notice sent to the taxpayer at the taxpayer's "last known address" that the Commissioner intends to assess that penalty (written notice). *See* §§ 6212(b), 6672(b)(1). Here the written notice was sent to petitioner at 99 Sandy Shores. According

[*8] to petitioner, Sandy Shores was not his last known address at the time the written notice was mailed. As noted, the written notice was returned to respondent and not received by petitioner.

As a general rule, a taxpayer's last known address is the address shown on his or her most recently filed tax return, unless the Commissioner is given clear and concise notification of a different address. Treas. Reg. § 301.6212-2(a). The relevant inquiry is what information the Commissioner had at the time the written notice was mailed and whether, in the light of all the surrounding facts and circumstances, the address used was one the Commissioner reasonably believed the taxpayer wanted the written notice to be sent to. *See Abeles v. Commissioner*, 91 T.C. 1019, 1035 (1988); *Pyo v. Commissioner*, 83 T.C. 626, 633 (1984).

At the time of the written notice, that is, December 17, 2014, the most recent communication respondent had received from petitioner was the updated Form 433–A that was submitted on or before November 4, 2014. On this Form 433–A petitioner or his representatives struck a prior address and made a handwritten notation showing 99 Sandy Shores as petitioner's current address. We find this to be a clear and concise indication that petitioner wanted to receive mail at 99 Sandy Shores at the time the written notice was mailed. *See Chase v. Commissioner*, T.C. Memo. 1990-139.

Petitioner contends that respondent, upon the return of the written notice, should have further investigated whether he was, in fact, living at 99 Sandy Shores, and that this failure to investigate rendered the written notice invalid as it was not sent to his last known address. The Commissioner, however, is under no obligation to take further action to investigate a taxpayer's address if a document properly mailed to the taxpayer's last known address is returned as undeliverable. *See Armstrong v. Commissioner*, 15 F.3d 970, 975–76 (10th Cir. 1994) (citing *King v. Commissioner*, 857 F.2d 676, 681 (9th Cir. 1988), *aff'g* 88 T.C. 1042 (1987)), *aff'g* T.C. Memo. 1992-328; *see also Mason*, 132 T.C. at 323; *Frieling v. Commissioner*, 81 T.C. 42, 52 (1983); *Davis v. Commissioner*, T.C. Memo. 2018-197, at *10–11 (citing *Gille v. United States*, 33 F.3d 46, 48 (10th Cir. 1994)), *aff'd*, 788 F. App'x 618 (10th Cir. 2019).

Respondent's mailing of the written notice required by the statute on December 17, 2014, by certified mail to petitioner at the 99 Sandy Shores address satisfied the requirements of section 6672(b); respondent had no further obligation to investigate petitioner's address or provide

[*9] further notice after the written notice was returned. *See Mason*, 132 T.C. at 322; *Davis*, T.C. Memo. 2018-197, at *9–11.

Petitioner's suggestion that he had reasonable cause for the failure to satisfy Company's employment tax liabilities must also be rejected. After becoming aware of Company's outstanding employment taxes, petitioner used Company funds for other purposes. "No such defense may be asserted by a responsible person who knew that the withholding taxes were due, but who made a conscious decision to use corporate funds to pay creditors other than the government." *Thosteson v. United States*, 331 F.3d 1294, 1301 (11th Cir. 2003) (quoting *Logal v. United States*, 195 F.3d 229, 233 (5th Cir. 1999)).

In cases such as this one, the Court reviews issues other than the existence or the amount of a taxpayer's underlying liability for abuse of discretion. *Sego*, 114 T.C. at 610. The parties stipulated that respondent's settlement officer verified that the written approval requirement under section 6751(b) was met. *See Chadwick v. Commissioner*, 154 T.C. 84 (2020) (holding that TFRPs are penalties subject to the written supervisory approval requirement for assessment). With the exception of issues relating to the existence or the amount of the underlying liability, the parties also stipulated that the determination to proceed with collection of the underlying liability by the filing of an NFTL was not an abuse of discretion. Otherwise, our review of the record confirms that respondent's settlement officer proceeded as required by sections 6320 and 6330. *See* § 6330(c)(1); *Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). That being so, we reject petitioner's claim that the determination to proceed with collection of the underlying liability is an abuse of discretion.

Petitioner claims that the underlying liability is overstated because it fails to take into account that some of Company's employment tax liabilities for the periods in question have been paid; respondent apparently agrees. Other than generalized information with respect to the correct amount of Company's unpaid employment taxes as they relate to the underlying liability here in dispute, there is insufficient evidence in the record to allow the Court to make specific findings on the point. We expect the parties can resolve any issues with respect to the amount of the underlying liability in an agreed Rule 155 computation. If they are unable to do so, further trial will be held to allow for specific evidence on the proper period or periods and amounts of employment taxes that should be included in petitioner's TFRP.

**[\*10]** To reflect the foregoing,

*Decision will be entered under Rule 155.*